UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM WEISS and ROBERT LESSMAN, and ANN HARRELL and EDDIE HARRELL, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., and BANK OF AMERICA REINSURANCE CORPORATION,<br><br>        Defendants. | Civil Action No. 2:15-cv-00062-CB |

**MEMORANDUM OF LAW IN SUPPORT OF BANK OF AMERICA CORP., BANK OF AMERICA, N.A., AND BANK OF AMERICA REINSURANCE CORP.'S MOTION TO <u>DISMISS THE COMPLAINT</u>**

David L. Permut (pro hac vice)
Matthew S. Sheldon (pro hac vice)
Keith Levenberg (pro hac vice)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
dpermut@goodwinprocter.com
msheldon@goodwinprocter.com
klevenberg@goodwinprocter.com

Mary J. Hackett
Pa. Bar. No. 51215
Ginevra F. Ventre
Pa. Bar. No. 316897
REED SMITH LLP
225 Fifth Ave.
Pittsburgh, Pa. 15222
Tel.: (412) 288-3131
Fax: (412) 288-3063
mhackett@reedsmith.com
gventre@reedsmith.com

*Counsel for Defendants*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND............................................................................................................2

    A. Private Mortgage Insurance .................................................................................2

    B. Prior Mortgage Insurance/Reinsurance Litigation............................................. .3

    C. Allegations and Theories of the Complaint ......................................................4

LEGAL STANDARD....................................................................................................5

ARGUMENT……….....................................................................................................6

I.  Plaintiffs' Claims Are Untimely. ..............................................................................6

    A. Plaintiffs' Claims Accrued When They Closed Their Loans in 2006 and 2007. ...............6

    B. The "Discovery Rule" and "Concealment" Doctrines Do Not Postpone the Accrual Date or Toll the Statute of Limitations....................................................7

        1. Naked Allegations that Plaintiffs Only Discovered the Alleged Facts Behind Their Claims With the Assistance of Counsel Do Not Defeat the Time Bar. ...............8

        2. Boilerplate Allegations of "Concealment" Do Not Defeat the Time Bar....................12

    C. *American Pipe* Tolling Has No Application Here. .........................................15

    D. All Timeliness Issues Presented Here Can Be Adjudicated as a Matter of Law. ..............16

II.  Plaintiffs' Claims Fail for Lack of Standing...........................................................17

III. Plaintiffs' Claims Also Fail on the Merits. ...........................................................19

    A. This Is a "Paradigmatic Case" of a Failure to Plead a RICO Enterprise. ..........................19

    B. Plaintiffs Fail to Plead Any Predicate Acts.......................................................22

    C. Plaintiffs' Other Claims Are Equally Meritless.................................................24

# TABLE OF AUTHORITIES

**CASES:**                                                                                                           Page

*Adams v. Cnty. of Erie, Pa.*,
   2009 WL 3087214 (W.D. Pa. Sept. 23, 2009)........................................................................23

*Agency Holding Corp. v. Malley-Duff Assocs., Inc.*,
   483 U.S. 143 (1987).........................................................................................................6

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
   554 F.3d 342 (3d Cir. 2009)..............................................................................................6

*Alexander v. Wash. Mut., Inc.*,
   No. 07- 4426 (E.D. Pa. filed Oct. 22, 2007) .........................................................................3

*Am. Pipe v. Utah*,
   414 U.S. 538 (1974)...............................................................................................6, 15, 16

*Alston v. Countrywide Fin. Corp.*,
   585 F.3d 753 (3d Cir. 2009).........................................................................................18, 19

*Alston v. Countrywide Fin. Corp.*,
   No. 06-8174 (C.D. Cal. filed Dec. 22, 2006).....................................................................3, 10

*Ayres v. GM*,
   234 F.3d 514 (11th Cir. 2000) ..........................................................................................22

*Badesha v. GMAC Mortg., LLC*,
   No. 06-7817 (N.D. Cal. filed Dec. 20, 2006).....................................................................3, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................5, 16, 20

*Benak v. Alliance Capital Mgmt. LP*,
   349 F. Supp. 2d 882 (D.N.J. 2004), *aff'd*, 435 F.3d 396 (3d Cir. 2006)............................10, 11

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. LP*,
   435 F.3d 396 (3d Cir. 2006)..........................................................................................6, 9, 11

*Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*,
   776 F.2d 1174 (3d Cir. 1985)...........................................................................................25

*Bridge v. Phoenix Bond & Indem. Co.*,
   128 S. Ct. 2131 (2008).....................................................................................................24

*Byrnes v. DeBolt Transfer, Inc.*,
   741 F.2d 620 (3d Cir. 1984)...............................................................................................5

*Cetel v. Kirwan Fin. Group, Inc.*,
    460 F.3d 494 (3d Cir. 2006)....................................................................................6

*Clark v. Prudential Ins. Co. of Am.*,
    289 F.R.D. 144 (D.N.J. 2013)................................................................................15

*Collegesource, Inc. v. Academyone, Inc.*,
    2015 2015 WL 469041 (3d Cir. Feb. 5, 2015)......................................................25

*Cunningham v. M&T Bank Corp.*,
    2015 2015 WL 539761, (M.D. Pa. Feb. 10, 2015) ...........................................7, 13

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991)............................................................................22

*El Paso Cnty. v. Bank of N.Y. Mellon*,
    2013 WL 285705 (W.D. Tax. Jan. 22, 2013) .......................................................22

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)............................................................................14, 16

*Gabelli v. SEC*,
    133 S. Ct. 1216 (2013)...............................................................................6, 8, 14

*Gruber v. Price Waterhouse*,
    697 F. Supp. 859 (E.D. Pa. 1988), *aff'd*, 911 F.2d 960 (3d Cir. 1990)..................10

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
    754 F. Supp. 2d 1239 (W.D. Wash. 2010)............................................................19

*Hedges v. United States*,
    404 F.3d 744 (3d Cir. 2005)..................................................................................15

*Hill v. Western Elec. Co.*,
    672 F.2d 381 (4th Cir. 1982) ................................................................................15

*Hopkins v. Am. Home Mortg. Servicing, Inc.*,
    2014 WL 580769 (N.D. Cal. Feb. 13, 2014) ........................................................22

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010).............................................................20, 21, 22, 24, 25

*Johnson v. Ry. Express Agency, Inc.*,
    421 U.S. 454 (1975)...............................................................................................16

*Kay v. Wells Fargo & Co.*,
    247 F.R.D. 572 (N.D. Cal. 2007).............................................................................7

*Kay v. Wells Fargo & Co.*,
   No. 07-1351 (N.D. Cal. filed Mar. 7, 2007) .................................................................3, 10

*Keogh v. Chicago N.W. Ry. Co.*,
   260 U.S. 156 (1922)..........................................................................................................17, 18

*Lander v. Hartford Life & Annuity Ins. Co.*,
   251 F.3d 101 (2d Cir. 2001)....................................................................................................18

*Liguori v. Wells Fargo & Co.*,
   No. 08-0479 (E.D. Pa. file Jan. 31, 2008)............................................................................3, 10

*Lombardi v. Allstate Ins. Co.*,
   2011 WL 294506 (W.D. Pa. Jan. 27, 2011).............................................................................19

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004)....................................................................................................19

*Matthews v. Kidder, Peabody & Co.*,
   2000 WL 33726916 (W.D. Pa. Aug. 18, 2000) .................................................................13, 14

*Matthews v. Kidder, Peabody & Co.*,
   260 F.3d 239 (3d Cir. 2001)...............................................................................................12, 13

*McCarn v. HSBC USA, Inc.*,
   2012 WL 5499433 (E.D. Cal. Nov. 13, 2012)......................................................................9, 16

*McCray v. Fidelity Nat'l Title Ins. Co.*,
   682 F.3d 229 (3d Cir. 2012)...............................................................................................17, 18

*McCulloch v. PNC Bank Inc.*,
   298 F.3d 1217 (11th Cir. 2002) ..............................................................................................23

*McCullough v. Zimmer, Inc.*,
   2009 2009 WL 775402 (W.D. Pa. Mar. 18, 2009) ..................................................................22

*Menichino v. Citibank, N.A.*,
   2013 WL 3802451 (W.D. Pa. July 19, 2013) ...........................................................................5

*Mullinax v. Radian Guar.*,
   199 F. Supp. 2d 311 (M.D.N.C. 2002) ..............................................................................10, 14

*Munoz v. PHH Mortg.*,
   No. 08-0759 (E.D. Cal. filed June 2, 2008) ..............................................................................3

*In re N.J. Title Ins. Litig.*,
   683 F.3d 451 (3d Cir. 2012)....................................................................................................18

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002)................................................................6, 13

*Norman v. Niagara Mohawk Power Corp.*,
   873 F.2d 634 (2d Cir. 1989)........................................................................22

*Orange v. Wachovia Bank, N.A.*,
   2013 U.S. Dist. LEXIS 157695 (C.D. Cal. May 6, 2013) ...................9, 16

*Patetta v. Wells Fargo Bank, N.A.*,
   2009 WL 2905450 (D.N.J. Sept. 10, 2009) ................................................7

*Pedraza v. United Guar. Corp.*,
   114 F. Supp. 2d 1347 (S.D. Ga. 2000)......................................................10

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
   522 F.3d 1049 (9th Cir. 2008) ...................................................................15

*In re Processed Egg Prods. Antitrust Litig.*,
   931 F. Supp. 2d 654 (E.D. Pa. 2013) ........................................................16

*Riddle v. Bank of Am. Corp.*,
   2013 2013 WL 6061363 (E.D. Pa. Nov. 18, 2013) ...................... *passim*
   588 F. App'x 127 (3d Cir. 2014) ............................................... *passim*

*Samp v. JPMorgan Chase Bank, N.A.*,
   2013 2013 WL 1912867 (C.D. Cal. May 7, 2013) .................................9, 16

*Sedima S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985).....................................................................................17

*Stevenson v. Carroll*,
   495 F.3d 62 (3d Cir. 2007)............................................................................5

*Taffet v. S. Co.*,
   967 F.2d 1483 (11th Cir. 1992) ..................................................................19

*In re TMI*,
   89 F.3d 1106 (3d Cir. 1996)........................................................................11

*Trentadue v. Gorton*,
   738 N.W.2d 664 (Mich. 2007).....................................................................11

*In re Unisys Corp. Retiree Medical Benefit ERISA Litig.*,
   242 F.3d 497 (3d Cir. 2001)........................................................................14

*United States v. Riley*,
   621 F.3d 312 (3d Cir. 2010)........................................................................23

*Va. Sur. Co. v. Macedo*,
  2009 2009 WL 3230909 (D.N.J. Sept. 30, 2009) ..................................................23

*Wash. Steel Corp v. TW Cor*p.,
  602 F.2d 594 (3d Cir. 1979)....................................................................................23

*Wegoland Ltd. v. NYNEX Corp.*,
  27 F.3d 17 (2d Cir. 1994) .......................................................................................18

*Weiss v. First Unum Life Ins. Co.*,
  482 F.3d 254 (3d Cir. 2007)....................................................................................17

*Welborn v. Bank of N.Y. Mellon*,
  2013 WL 149707 (M.D. La. Jan. 14, 2013).............................................................22

*W. & S. Life Ins. Co. v. Countrywide Fin. Corp.*,
  2012 2012 WL 10731957 (C.D. Cal. June 29, 2012) .........................................20, 21

*White v. PNC Fin. Servs. Group*,
  2013 2013 WL 3090823 (E.D. Pa. June 20, 2013) ....................................................9

*Yates v. GMAC Mortg. LLC*,
  2010 WL 5316550 (N.D. Ga. Dec. 17, 2010)............................................................7

## <u>STATUTES, RULES, AND REGULATIONS</u>:

McCarran-Ferguson Act,
  15 U.S.C. § 1012 .....................................................................................................18

Racketeer Influenced and Corrupt Organizations Act (RICO)............................................ *passim*
  18 U.S.C. § 1961.................................................................................................1, 22
  18 U.S.C. § 1964..................................................................................................17

Real Estate Settlement Procedures Act (RESPA)............................................................. *passim*
  12 U.S.C. § 2601 .......................................................................................................1

12 U.S.C. § 4903................................................................................................................24

24 C.F.R. § 3500.15 ....................................................................................................23, 24

FED. R. CIV. P. 9(b) ........................................................................................................5, 9

FED. R. CIV. P. 12(b) .....................................................................................................5, 16

40 Pa. Code § 710-5..........................................................................................................18

40 Pa. Code § 710-7..........................................................................................................18

40 Pa. Code § 710-9..........................................................................................................18

42 Pa. Code § 5525 ..................................................................................................25

Mich. Comp. L. § 500.2403 .....................................................................................18

Mich. Comp. L. § 500.2406 .....................................................................................18

Mich. Comp. L. § 500.2416 .....................................................................................18

Mich. Comp. L. § 500.2406 .....................................................................................18

Mich. Comp. L. § 600.5813 .....................................................................................25

## NEWS ARTICLES:

Michele Derus, *MGIC Posts 40% Jump in Profits; Employment Gains Credited with Drop in Mortgage Delinquency*, MILWAUKEE J. SENTINEL, Apr. 15, 2005 ...................12

*GE to Sell Remainder of Genworth Stock*, WALL ST. J., Feb. 28, 2006.........................................11

Kenneth Harney, *New Rules Put Spotlight on Insurance-Fee Splits*, CHI. TRIB., Feb. 24, 2008.................................................................................................11, 12

*PHH Mortgage: Faces California Lawsuit Over Illegally Split Fees*, CLASS ACTION REPORTER, July 17, 2008.........................................................................11

Bob Rayner, *SEC hits local firm with a subpoena*, RICHMOND TIMES-DISPATCH (May 13, 2005).......................................................................................................11

*Wells Fargo: Accused of Taking Kickbacks for Mortgage Insurance*, CLASS ACTION REPORTER, Mar. 11, 2008 ......................................................................11

## PRELIMINARY STATEMENT

This case attempts to revive another putative class action previously filed in this Circuit, *Riddle v. Bank of Am. Corp.*, No. 12-1740 (E.D. Pa.), which challenged the same captive reinsurance arrangement under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* The District Court held that claim time-barred, and the Third Circuit affirmed. 588 F. App'x 127 (3d Cir. 2014). The *Riddle* plaintiffs' lawyers then filed this case, making the same basic allegations restyled as claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* But this new label does not justify a different result. Plaintiffs' claims are still time-barred, and also fail to state a RICO claim.

Plaintiffs' mortgage loans closed in 2006 and 2007. Because they made down payments of less than 20%, the investor required mortgage insurance. Compl. (ECF No. 1) ¶¶ 10, 22-23. Bank of America, N.A. ("BANA") obtained the coverage from unaffiliated, third-party insurers, but Plaintiffs complain that the insurers had agreements to reinsure loans with Bank of America Reinsurance Corp. ("BARC"). *Id.* at ¶¶ 11-12. Plaintiffs call the reinsurance premiums paid to BARC "kickbacks" in violation of RESPA. *Id.* at ¶ 15. In an effort to manufacture a RICO claim, they allege Defendants committed mail and wire fraud and "honest services" fraud by not disclosing they were violating RESPA. *Id.* at ¶ 158.

Plaintiffs did not file this suit until 2015, and thus claim the statute of limitations was tolled. *Id.* at ¶ 137. In support of this theory, they claim Defendants "concealed" their alleged RICO enterprise and that Plaintiffs discovered their claims "only with the assistance of counsel." *Id.* at ¶¶ 138-41. All Plaintiffs mean, of course, is that their lawyers brought publicly available information to their attention. That is not sufficient to defeat the statute of limitations, which is governed by an objective, inquiry-notice standard. The date Plaintiffs discovered their claims is

irrelevant if a reasonably diligent investigation would have revealed the basis for those claims sooner, and this Court can take judicial notice of a vast array of available material that would have done just that—including many items referenced in Plaintiffs' own Complaint.

Plaintiffs' claims are meritless in any event.  There is a reason Plaintiffs' counsel did not assert RICO claims in *Riddle*.  RICO is not an all-purpose vehicle to make a federal case out of any conceivable grievance: it requires plaintiffs to plead a cognizable economic injury, an actual criminal enterprise, and specific predicate acts.  Plaintiffs have pled none of these things.  Their alleged injury is foreclosed by the filed-rate doctrine, which bars lawsuits contesting the reasonableness of rates filed with regulatory agencies.  The alleged "enterprise" of the Defendants together with every third-party mortgage insurer (Compl. ¶ 153) is not cognizable because the insurers' alleged "hub-and-spoke" relationships with Defendants do not bespeak coordination or a common purpose.  Finally, Plaintiffs fail to plead the essential predicate acts. Alleged RESPA violations and "honest services" fraud are not predicate acts under RICO, and Plaintiffs' mail- and wire-fraud allegations fail to plead any actual misstatement.  Any of the above grounds are sufficient cause to dismiss the Complaint with prejudice.

## BACKGROUND

### A.      Private Mortgage Insurance

Mortgage insurance is typically required when the principal balance of a loan exceeds 80% of the value of the property, and is canceled once the borrower builds up enough equity. *See* Compl. ¶¶ 31-32.  The coverage is taken out by the lender, but the premiums are often reimbursed by the borrower. *Id*. at ¶ 35.  Like any insurance carrier, mortgage insurers sometimes reinsure some or all of their portfolio. Bank of America, like many other lenders, had an affiliated reinsurer (dubbed a "captive reinsurer," because it only reinsured Bank of America

loans).  *See id*. at ¶ 79.  Plaintiffs acknowledge that such arrangements are perfectly legal and, in

Bank of America's case, were approved by the appropriate regulatory authorities.  *See* Compl.

Ex. 18 (OCC authorization for BARC "to reinsure a portion of the mortgage insurance on loans

serviced, originated, or purchased by the Bank or the Bank's subsidiaries").

**B.      Prior Mortgage Insurance/Reinsurance Litigation**

Captive mortgage reinsurance arrangements were common and have been the subject of

legal challenges for well over a decade.  Plaintiffs' counsel has filed over a dozen putative class

actions challenging "captive reinsurance schemes," dating back to 2006.[1]  Plaintiffs also make

reference to "subpoenas from states, including Minnesota and New York, as well as the

Consumer Financial Protection Bureau and HUD," dating back to 2005.  Compl. ¶ 75.

In April 2012, Plaintiffs' counsel filed *Riddle* against the same defendants named here

(and third-party mortgage insurers), alleging that reinsurance premiums paid to BARC were

actually "referral payments" prohibited by RESPA.  No. 12-1740 (E.D. Pa.), ECF No. 1, ¶ 1.

Following a motion to dismiss the claims as time-barred, the District Court allowed

"tailored discovery" on the limitations issue and then granted summary judgment to the

defendants.  *Riddle v. Bank of Am. Corp.*, 2013 WL 6061363, *1-2 (E.D. Pa. Nov. 18, 2013).

The Court noted that RESPA's one-year statute of limitations begins at the loan's closing, and

rejected plaintiffs' claim for equitable tolling.  *Id*. at *4.  Specifically, the Court found that

plaintiffs' admissions that they "first uncovered the possible existence" of their claims "through

conferring with [their] attorneys" years after their loans closed were insufficient to establish

---

[1] *E.g.*, *Badesha v. GMAC Mortg., LLC*, No. 06-7817 (N.D. Cal. filed Dec. 20, 2006); *Alston v. Countrywide Fin. Corp.*, No. 06-8174 (C.D. Cal. filed Dec. 22, 2006); *Kay v. Wells Fargo & Co.*, No. 07-1351 (N.D. Cal. filed Mar. 7, 2007); *Alexander v. Wash. Mut., Inc.*, No. 07- 4426 (E.D. Pa. filed Oct. 22, 2007); *Liguori v. Wells Fargo & Co.*, No. 08-0479 (E.D. Pa. file Jan. 31, 2008); *Munoz v. PHH Mortg.*, No. 08-0759 (E.D. Cal. filed June 2, 2008).

reasonable diligence in investigating and pursuing their claims.  *Id*. at *6.  The Court rejected the argument that "prior to lawyerly intervention, they had no reason to suspect that they were victims of Defendants' scheme," finding that it would "render[] the statute of limitations a nullity" and was "undercut" by the fact that "there are a number of cases alleging identical schemes that were filed as early as 2006."  *Id*. at *7.  The Court further rejected plaintiffs' argument that they could not have discovered their claims sooner because defendants "conceal[ed] their unlawful acts from [p]laintiffs," holding that fraudulent concealment requires "an affirmative act of concealment" and not a mere failure to disclose that Defendants allegedly "were running a scheme in violation of RESPA."  *Id*. at *8-9.

The Third Circuit affirmed, holding that "[t]aking the defendants' representations at face value without asking a single question for seven years is insufficient diligence to toll the statute of limitations."  *Riddle*, 588 F. App'x at 130.

## C.    Allegations and Theories of the Complaint

On January 14, 2015, the day after the *Riddle* deadline to seek *certiorari* expired, Plaintiffs filed the instant Complaint.  Plaintiffs allege that they were required to pay for mortgage insurance when they closed on their loans in 2006 and 2007 and further allege that the insurers had "reinsurance arrangement[s]" with BARC.  Compl. ¶¶ 22-23.  They concede that there arrangements were disclosed up front, quoting the following from their closing documents:

> Your loan requires primary mortgage insurance. . . . Mortgage Insurance reimburses the lender for losses the lender may incur if you fail to make the payment on your loan as required. While Mortgage Insurance <u>does not</u> provide a direct monetary benefit to you, it does allow you to obtain a mortgage loan with a lower downpayment. . . .
>
> ***Your lender or a subsequent owner of your loan may, directly or through an affiliated company (the "Reinsurance Company"), enter into a reinsurance or other risk sharing agreement with the insurance company that will be providing Mortgage Insurance covering your loan.***
>
> Under such an agreement, the Reinsurance Company may assume a portion of the risk

associated with such Mortgage Insurance. In exchange for its assumption of such risk, the Reinsurance Company may receive a percentage of the mortgage insurance premium paid to obtain the Mortgage Insurance covering your loan.

Compl. ¶ 110 (emphasis added).   Notwithstanding these disclosures, Plaintiffs claim that the reinsurance arrangements violated RESPA provisions prohibiting lenders "from splitting private mortgage insurance premiums with the Private Mortgage Insurer other than for services actually performed by the captive reinsurer."  *Id*. at ¶ 102.  In an effort to address the eminently logical objection that the coverage provided by BARC *was* a "service[] actually performed by the captive reinsurer," Plaintiffs allege that this was not "real reinsurance" because, through 2011, BARC collected more in premiums than it paid out in claims.[2]  *Id*. at ¶ 86.  These allegations are identical to the allegations in *Riddle*, but Plaintiffs now try to shoehorn them into RICO claims.

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it fails to allege plausible facts that "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court need not accept conclusory recitations of law as true.  *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007).  A complaint can be dismissed as time-barred "if it is plain on the face of the complaint that the limitations period cannot be tolled" or if plaintiffs fail to "plead the applicability of the [tolling] doctrine."  *Menichino v. Citibank, N.A.*, 2013 WL 3802451, *6-7 (W.D. Pa. July 19, 2013) (collecting Third Circuit cases).  Tolling allegations based on concealment must be pled in accord with the heightened standards of Fed. R. Civ. P. 9(b).  *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984).

---

[2] Because claims are only paid after completed foreclosures, there is a significant time lag between when borrowers go into default and when claims are paid. By intentionally excluding more recent years, Plaintiffs substantially understate the claims actually paid by BARC.

<u>**ARGUMENT**</u>

## I.   PLAINTIFFS' CLAIMS ARE UNTIMELY.

RICO claims must be filed within four years of accrual.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  Thus, Plaintiffs' claims are time-barred if they accrued before January 14, 2011, unless the statute has been tolled.  Plaintiffs make a series of allegations to plead around the time bar, but do not offer a coherent theory of why their claims are timely—*i.e.*, they do not specify whether their position is that their claims accrued *after* January 14, 2011, or whether their position is that their claims accrued *before* January 14, 2011 but the statute was tolled.[3]  Instead, the Complaint lumps both theories together, making allegations about when Plaintiffs "should have known about their injury" (which speaks to accrual) while also purporting to invoke concealment (which speaks to tolling) and the *American Pipe* doctrine (another tolling rule).  *E.g.*, Compl. ¶¶ 135-39.  Ultimately, these distinctions do not matter, because Plaintiffs plead no facts capable of making their claims timely.

### A.   Plaintiffs' Claims Accrued When They Closed Their Loans in 2006 and 2007.

A RICO claim accrues once "plaintiffs knew or should have known of their injury." Compl. ¶ 135.  The "should have known" inquiry is a "totally objective," "inquiry notice" standard.  *E.g.*, *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 347 (3d Cir. 2009); *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. LP*, 435 F.3d 396, 400 (3d Cir. 2006); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1325 (3d Cir. 2002).  Once Plaintiffs are on inquiry notice, they are obligated to "exercise[] reasonable diligence" in investigating their claims.  *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006).

---

[3] *See generally Gabelli v. SEC*, 133 S. Ct. 1216, 1220 n.2 (2013) (distinguishing "the discovery rule, which governs when a claim accrues, from doctrines that toll the running of an applicable limitations period").

Plaintiffs closed their loans in 2006 and 2007.  Compl. ¶ 166.  Courts in this Circuit and elsewhere have held that where alleged predicate acts included "events occurring [at] the closing of [a] mortgage loan," those RICO claims accrue at closing.  *Yates v. GMAC Mortg. LLC*, 2010 WL 5316550, *3 (N.D. Ga. Dec. 17, 2010); *accord Patetta v. Wells Fargo Bank, N.A.*, 2009 WL 2905450, *6 (D.N.J. Sept. 10, 2009).  That is because plaintiffs contesting statements in their loan documents can investigate those statements as soon as they are made.

One need look no further than the allegations in the Complaint and the documents Plaintiffs attached as exhibits to determine that Plaintiffs' RICO claim, like a RESPA claim, accrued at closing.  Documents provided to Plaintiffs at closing disclosed that the mortgage insurers might procure reinsurance from a Bank of America affiliate—and even provided them with the ability to exclude their loan from the reinsurance arrangement. Compl. ¶ 110 & Ex. 40. That was enough to put Plaintiffs on inquiry notice and charge them with a duty of diligent investigation.  *See*, *e.g.*, *Cunningham v. M&T Bank Corp.*, 2015 WL 539761, *7 n.8 (M.D. Pa. Feb. 10, 2015) ("Plaintiffs possessed all facts necessary to further investigate the captive reinsurance scheme . . . at the time of closing."); *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 578 (N.D. Cal. 2007) (where "each borrower was given a disclosure of the arrangement between [reinsurer] and the private mortgage insurers," "plaintiff was on notice of the possible existence of a claim").  Because Plaintiffs had a duty to investigate after their loans closed in 2006 and 2007 (and their Complaint concedes that they conducted no investigation, *see* Compl. ¶ 141), RICO's four-year limitations period expired long before they filed their claims in 2015.

**B. The "Discovery Rule" and "Concealment" Doctrines Do Not Postpone the Accrual Date or Toll the Statute of Limitations.**

As noted, Plaintiffs rely on both the discovery rule and allegations of "concealment" in an effort to defeat the time bar.  Compl. ¶¶ 137-39.  While the legal effect of these allegations is

different,  *see Gabelli*, *supra* n.3, both theories ultimately fail for the same reasons: Plaintiffs plead no facts plausibly suggesting that they could not have discovered their claim until 2011 (or later), and also plead no facts plausibly suggesting that defendant committed any affirmative acts of fraudulent concealment that would excuse this failure to investigate.

### 1. Naked Allegations that Plaintiffs Only Discovered the Alleged Facts Behind Their Claims With the Assistance of Counsel Do Not Defeat the Time Bar.

In an effort to plead themselves around RICO's four-year time bar, Plaintiffs allege that they "were able to discover the underlying basis for the[ir] claims alleged herein only with the assistance of counsel" and "could not have known" of their claims otherwise.  Compl. ¶¶ 138, 141.  They say they received this assistance in 2012, but admit they did nothing to pursue their claims before then.  *Id.*

This is the exact theory asserted in *Riddle* and rejected by the Third Circuit. In *Riddle* (as in this case), "[t]he plaintiffs were informed at their respective closings that a BAC entity may be involved in reinsuring their private mortgage insurance," but "neither took any action to investigate the reinsurance arrangement until each received an advertisement from their current counsel in 2012."  588 F. App'x at 129-30.  The *Riddle* plaintiffs made the same allegation, word-for-word, that Plaintiffs now make here: "Plaintiffs were able to discover the underlying basis for the claims alleged herein only with the assistance of counsel."  *Riddle*, No. 12-1740, ECF No. 67 ¶ 165 (E.D. Pa.); *accord* Compl. ¶ 141.  The District Court rejected this theory, finding that it would "eviscerate the statute of limitations" and "allow[] [p]laintiffs to . . . bring claims years later upon the receipt of a solicitation letter from an attorney."  2013 WL 6061363 at *8.  The Third Circuit affirmed, finding that accepting "the defendants' representation that the arrangement was legal . . . at face value without asking a single question for seven years is insufficient diligence to toll the statute of limitations."  *Riddle*, 588 F. App'x at 130.

This Court should hold the same.  Not only would Plaintiffs' argument "eviscerate the statute of limitations," but Plaintiffs plead no actual *facts* about the nature of the "assistance" their attorneys provided and why they needed such assistance to discover sufficient facts to put them on notice of their claims.  The failure to plead such facts requires dismissal on the pleadings.  For example, in *White v. PNC Fin. Servs. Group*, 2013 WL 3090823, *8 (E.D. Pa. June 20, 2013), the plaintiffs (also represented by Plaintiffs' counsel here) made the same allegation that "they were able to discover the underlying basis for the[ir] claims . . . only with the assistance of counsel."  Because those plaintiffs offered "no indication as to when, and under what circumstances, Plaintiffs discovered the critical facts underlying their RESPA claims," the Court found that the "assistance of counsel" allegation offered "no basis . . . , much less one consistent with Rule 9(b), on which I could conclude that Plaintiffs were reasonably unaware of the relevant facts until a time within the limitations period."  *Id.* at *7.  In another case (also brought by Plaintiffs' counsel here), the Eastern District of California ruled:

> Plaintiff fails to allege the time or manner of discovery at all other than that it was made with the assistance of counsel. The FAC therefore contains no "facts showing the time and surrounding circumstances of the discovery of the cause of action" as required for the application of delayed discovery.

*McCarn v. HSBC USA, Inc.*, 2012 WL 5499433, *8 (E.D. Cal. Nov. 13, 2012); *see also Samp v. JPMorgan Chase Bank, N.A.*, 2013 WL 1912867, *7 (C.D. Cal. May 7, 2013) (citing *McCarn*); *Orange v. Wachovia Bank, N.A.*, 2013 U.S. Dist. LEXIS 157695, *12-13 (same).

Not only does the Complaint fail to plead any plausible facts showing why Plaintiffs could not have discovered enough facts to be on notice of their claims without the assistance of counsel, this Court can take judicial notice of publicly available facts that make this theory wholly *im*plausible.  In assessing whether there was "sufficient information" in the public realm to put Plaintiffs on "inquiry notice," *Benak*, 435 F.3d at 400, this Court can consider "publicly

available news articles," *id*., other suits "alleging identical schemes," *Riddle*, 2013 WL 6061363, at *7, and government investigations into the same matters. *Gruber v. Price Waterhouse*, 697 F. Supp. 859, 865 (E.D. Pa. 1988), *aff'd*, 911 F.2d 960 (3d Cir. 1990). Here, most prominently, Plaintiffs' counsel has filed other suits "alleging identical schemes" from 2006 to the present:

- "While these payments to GMAC's wholly-owned subsidiary were purportedly for 'reinsurance' services, CAP RE received these payments while assuming very little or no actual risk." Compl., *Badesha v. GMAC LLC*, No. 06-7817 (N.D. Cal. filed Dec. 20, 2006), ECF No. 1 ¶ 6.

- "While these payments to Countrywide's wholly-owned subsidiary were purportedly for 'reinsurance' services, Balboa received these payments while assuming very little or no actual risk." Compl., *Alston v. Countrywide Fin. Corp.*, No. 06-8174 (C.D. Cal. filed Dec. 22, 2006), ECF No. 1 ¶ 6.

- "While these payments to Wells Fargo's wholly-owned subsidiary were purportedly for 'reinsurance' services, North Star received these payments while assuming very little or no actual risk." Compl., *Kay v. Wells Fargo & Co.*, No. 07-1351 (N.D. Cal. filed Mar. 7, 2007), ECF No. 1 ¶ 6; Compl., *Liguori v. Wells Fargo & Co.*, No. 08-0479 (E.D. Pa. filed Jan. 31, 2008), ECF No. 1 ¶ 6 (same).

The same is alleged in Plaintiffs' Complaint here (Compl. ¶ 15):

- "While the kickback payments to BoA RE by the Private Mortgage Insurers were purportedly for 'reinsurance' services, BoA RE received these payments while assuming very little or no actual risk under its contracts with the Private Mortgage Insurers."

The *Alston*, *Badesha*, *Kay*, and *Liguori* plaintiffs had access to the same information as Plaintiffs—and had similar representations made to them—and were able to bring their claims in a timely manner. And these are only a few of the cases involving Plaintiffs' own counsel—other suits making the same claims date back even further. *See, e.g.*, *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 315 (M.D.N.C. 2002) (suit filed in 2000 alleging that reinsurance premiums "translated into a kickback for the lenders"); *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1348 (S.D. Ga. 2000) (suit filed in 1999 alleging mortgage insurance "kickback scheme" in violation of RESPA). "The very existence" of these lawsuits establishes sufficient warning "to trigger the limitations period for plaintiffs." *Benak v. Alliance Capital Mgmt. LP*, 349 F.

Supp. 2d 882, 892 (D.N.J. 2004), *aff'd*, 435 F.3d 396, 403 & n.20 (3d Cir. 2006) ("The filing of related lawsuits can suffice to put plaintiffs on inquiry notice, where the alleged fraud is similar.").  Indeed, the fact that "there are a number of cases alleging identical schemes that were filed as early as 2006" was the primary ground cited in *Riddle* for its rejection of "Plaintiffs' contention that they could not [have] discover[ed] their claims" in a timely manner.  2013 WL 606136,3 at *7; *see also In re TMI*, 89 F.3d 1106, 1118 (3d Cir. 1996) (suit time-barred where "other plaintiffs obtained sufficient information to file suit within the statute of limitations").

Plaintiffs also cite government investigations and news reports that would have been equally capable of putting a reasonably diligent plaintiff on inquiry notice.  Plaintiffs cite 2008 disclosures concerning a HUD investigation into reinsurance practices dating back to "the late 1990s."  Compl. ¶¶ 3, 75 & Ex. 28.  Plaintiffs also cite 2008 disclosures of subpoenas from states, including Minnesota and New York . . . requesting information relating to captive reinsurance."  *Id*.  Articles and SEC filings confirm these inquiries were actually publicized earlier.[4]  Numerous other investigations and lawsuits were reported during the same period.[5]

---

[4] *See*, *e.g.*, 10-Q, Genworth Fin., Inc. (Mar. 31, 2006), at 49 ("As previously identified, in May 2005, each of our U.S. mortgage insurance subsidiaries received an information request from the State of New York Insurance Department with respect to captive reinsurance transactions with lender-affiliated reinsurers and other types of arrangements in which lending institutions receive from our subsidiary any form of payment, compensation or other consideration in connection with issuance of a policy covering a mortgagor of the lending institution."); *GE to Sell Remainder of Genworth Stock*, Wall St. J., Feb. 28, 2006 ("The Minnesota Commerce Department issued the subpoena in January as part of an industrywide review" of "reinsurance arrangements"); Bob Rayner, *SEC hits local firm with a subpoena*, *Genworth promises it will fully cooperate with investigation*, Richmond Times-Dispatch (May 13, 2005) ("Reinsurance is intended to help manage an insurer's risk, but investigators have alleged that some companies . . . [made] deals where risk is not actually transferred from one insurer to another.").

[5] *PHH Mortgage: Faces California Lawsuit Over Illegally Split Fees*, Class Action Reporter, July 17, 2008 (reporting allegations that captive reinsurance arrangements were part of a "conspiracy to circumvent RESPA's prohibition against kickbacks"); *Wells Fargo: Accused of Taking Kickbacks for Mortgage Insurance*, Class Action Reporter, Mar. 11, 2008 (same); Kenneth Harney, *New Rules Put Spotlight on Insurance-Fee Splits*, Chi. Trib., Feb. 24, 2008, at

Whether Plaintiffs *actually* knew any of this until they were solicited by counsel is irrelevant. The standard is "totally objective." *Matthews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001). "Plaintiffs need not be aware of the suspicious circumstances or understand their import" to be on inquiry notice. *Id.*

### 2. Boilerplate Allegations of "Concealment" Do Not Defeat the Time Bar.

Plaintiffs' other tactic is to allege that "Defendants knowingly and actively concealed the basis for Plaintiffs' claims," thereby excusing their admitted lack of diligence. Compl. ¶ 139. But the Complaint does *not*, in fact, allege concealment of the factual basis for Plaintiffs' claims—it alleges the *opposite*, that the reinsurance arrangement was explicitly disclosed. Compl. ¶ 110. Plaintiffs try to evade this conceded fact by quoting a magazine article which reported that "[m]ost of the time, lenders did not tell borrowers in advance that their captives were reinsuring the deals." Compl. ¶ 140. But whatever other unnamed lenders supposedly did "[m]ost of the time" has no bearing on this case, where Plaintiffs admit that Bank of America told them in advance that it may "enter into a reinsurance or other risk sharing agreement with the insurance company that will be providing Mortgage Insurance covering your loan." *Id.* at ¶ 110. Faced with identical allegations in *Riddle*, the Third Circuit ruled:

> The plaintiffs were informed at their respective closings that a BAC entity may be involved in reinsuring their private mortgage insurance, but took no subsequent action to determine whether any such reinsurance arrangement was legitimate. . . . They simply accepted the defendants' representations that the arrangement was legal, and went about their lives for the next seven years, conducting no investigation at all during that time. Taking the Defendants' representations at face value without asking a single question for seven years is insufficient diligence to toll the statute of limitations.

33 (reporting that under "captive reinsurance arrangement[s]," "lenders clamored for—and got— splits of consumers' premiums that appeared unlikely to be paid back for insurance claims."); Michele Derus, *MGIC Posts 40% Jump in Profits; Employment Gains Credited with Drop in Mortgage Delinquency*, Milwaukee J. Sentinel, Apr. 15, 2005, at 3 ("[M]ortgage insurers . . . have been targeted on alleged violations of [RESPA]. . . . [I]nsurance regulators in Colorado and North Carolina are considering probes into mortgage reinsurance arrangements: specifically, if illegal kickbacks are involved.").

588 F. App'x at 130.

Plaintiffs argue that "a disclosure that states that the reinsurer will assume some portion of the risk associated with a borrower's loan is insufficient to put the average homebuyer on notice that anything improper or actionable may have occurred . . . ."  Compl. ¶ 144.  Plaintiffs claim they are not "insurance expert[s]" and thus could not have determined that anything improper occurred without specifically being told that "the actual reinsurance services provided by BoA RE were a sham," or without being privy to the insurers' "actuarial analyses."  Compl. ¶¶ 143-44, 146.  But plaintiffs need not be aware of "every fact necessary to bring a RICO action" in order to be on inquiry notice.  *Matthews v. Kidder, Peabody & Co.*, 2000 WL 33726916, *14 (W.D. Pa. Aug. 18, 2000), *aff'd*, 260 F.3d 239 (3d Cir. 2001).  Inquiry notice arises when plaintiffs possess enough facts to prompt a further investigation.  *See Cunningham*, 2015 WL 539761, at *7 n.8.  And once plaintiffs are on inquiry notice, they "are held to have constructive notice of all facts that could have been learned through diligent investigation."  *NAHC*, 306 F.3d at 1326.  Had Plaintiffs conducted a diligent investigation, they would have discovered the other cases challenging the same type of arrangement Plaintiffs challenge here, and would have been fully equipped to file suit, with or without "actuarial analyses."

Plaintiffs purport to allege that they acted with reasonable diligence—but only in boilerplate.  They say they "did not and could not have known of Defendants' scheme and the injuries suffered by Plaintiffs and the Class despite their exercise of due diligence, because Defendants knowingly and actively concealed the basis for Plaintiffs' claims. . . ."  Compl. ¶ 139.  But Plaintiffs do not allege anything about what this "exercise of due diligence" is supposed to have entailed.  That is because they did nothing at all, as they admit two paragraphs later in alleging that they "had no basis upon which to investigate the validity of the payments."

*Id*. at ¶ 141.  A boilerplate allegation that Plaintiffs exercised reasonable diligence (even if it were not followed by an admission that they hadn't) is not enough to plead around the statute of limitations.  Plaintiffs must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Plaintiffs' allegations about active concealment do not excuse their lack of diligence.  To plead that a statute of limitations was tolled through concealment, a plaintiff must allege that "the defendant [took] steps beyond the challenged conduct itself to conceal that conduct from the plaintiff." *Gabelli*, 133 S. Ct. at 1220 n.2; *accord In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 503 (3d Cir. 2001).  Plaintiffs allege no such "affirmative steps" (*Unisys*, *supra*), instead relying on their allegation that the alleged misconduct was "self-concealing."  Compl. ¶ 139.  Other courts have already rejected this theory in identical circumstances, holding that an alleged mortgage reinsurance kickback scheme "does not qualify as a self-concealing wrong." *Mullinax*, 199 F. Supp. 2d at 329.  Among other grounds, *Mullinax* noted that "'mere silence, or one's unwillingness to divulge one's allegedly wrongful activities,' does not by itself establish fraudulent concealment." *Id*. (quoting *Pinney Dock & Transp. Corp. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988)).  Plaintiffs acknowledge that their RICO claims are "premised on the same factual basis" as a RESPA claim.  Compl. ¶ 136.  If they cannot plead concealment as to a RESPA violation, then they cannot plausibly plead concealment as to a RICO violation, either. *See Matthews*, 2000 WL 33726916, at *14 (inquiry notice triggered once plaintiff is aware of "the possible violation of his legal rights," regardless whether he is "aware of every fact necessary to bring a RICO action").

Moreover, even if the disclosures to Plaintiffs in 2006 and 2007 *did* "actively conceal" an illegal scheme as Plaintiffs allege, that would not suffice to toll the statute of limitations after

other lawsuits, news reports, and company filings *made public* the very information Plaintiffs claim was concealed.  *See*, *e.g.*, *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055-56 (9th Cir. 2008) (rejecting argument that statute was tolled by plaintiff's reliance on defendant's representations where plaintiff "should have been suspicious that [defendant] negligently represented that [its products] were safe, given the recall and the class action suit"); *Clark v. Prudential Ins. Co. of Am.*, 289 F.R.D. 144, 195 (D.N.J. 2013) ("[I]f the party has reason to believe that any representations made to him or her . . . are false or only partially true, it is the party's legal duty to complete the investigation, and he or she has no right to rely on statements of the other contracting party.").  "Equitable tolling is an extraordinary remedy which should be extended only sparingly." *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005). Plaintiffs have alleged nothing to justify extending it here.

### C. *American Pipe* Tolling Has No Application Here.

Plaintiffs also claim tolling under the *American Pipe* doctrine, under which "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).  Plaintiffs allege that their claims therefore "have been tolled from April 5, 2012 through January 13, 2015, during the pendency of *Riddle*" (which, ironically enough, was itself time-barred).  Compl. ¶ 136.

This theory is a non-sequitur.  *American Pipe* can suspend a statute of limitations that is still running, but it cannot revive a claim that had "already expired."  *Hill v. W. Elec. Co.*, 672 F.2d 381, 394 (4th Cir. 1982).  As discussed above, four years already had lapsed by April 5, 2012, when *Riddle* was filed.  The only circumstance in which *American Pipe* could have any possible relevance here is if the statute of limitations for Plaintiffs' claims began running *after* April 5, 2008, but *before* January 14, 2011.  There are no allegations in the Complaint that even

attempt to allege that the statute began to run during this window.  To the contrary, Plaintiffs allege that it began to run in 2012.  Compl. ¶ 141.

*American Pipe* is also inapplicable here because its effect is to "suspend[] the applicable statute of limitations as to all asserted members of the class" (414 U.S. at 554)—but the statute of limitations "applicable" to the *Riddle* class was RESPA's, not RICO's.  Plaintiffs therefore cannot benefit from *Riddle*.  *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 (1975) ("[T]he tolling effect given to the timely prior filings in *American Pipe* . . . depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted.").

### D.  All Timeliness Issues Presented Here Can Be Adjudicated as a Matter of Law.

Plaintiffs will likely emphasize that *Riddle* was decided on summary judgment and urge that they, too, should be permitted to take discovery.  There is no merit to this position.  Since *Twombly* and *Iqbal*, plaintiffs have been required to "set out 'sufficient factual matter' to show that the claim is facially plausible" (*Fowler*, 578 F.3d at 210)—including any claimed basis for tolling a statute of limitations.  *E.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654, 657 (E.D. Pa. 2013) (complaint's "factual allegations must be such as to allow the Court to reasonably infer that the Plaintiffs may rely on the discovery rules they cite").  Plaintiffs have not and cannot do this.  And, indeed, other cases Plaintiffs' counsel filed around the same time as *Riddle*, with the same pleading defects as this Complaint, were dismissed on Rule 12(b)(6) grounds for this reason.  *See supra* Part I.B (citing *Samp*, *McCarn*, *Orange*).

*Riddle*, too, considering identical misrepresentation allegations, held that, as a matter of law, the mortgage document does not contain an "affirmative act of concealment," but points, at most, to mere silence by Bank of America.  2013 WL 6061363, at *8.  Further, *Riddle* identified the same publicly available (and thus judicially noticeable) information that prevents *any* plaintiffs bringing similar claims from successfully arguing that they "could not discover their

claims." 2013 WL 6061363, at 7-8; *see also* Compl. ¶ 3 (citing similar publicly available sources). This Court can hold the same, which takes out the linchpin of Plaintiffs' discovery rule and concealment allegations.

The same material facts regarding the plaintiffs' lack of diligence in *Riddle* have already been conceded here. *Compare Riddle*, 2013 WL 6061363, at *6 (no evidence of "any additional followup to discover or pursue potential claims" after closing; plaintiffs only followed up after they "first uncovered the possible existence of [their] claim[s]" upon conferring with counsel), *with* Compl. ¶ 141 (Plaintiffs did nothing to investigate until hearing from counsel in 2012). Thus, even assuming the Complaint's allegations to be true, they cannot serve as a basis for postponing or tolling the statute of limitations, nor would they excuse Plaintiffs' admitted lack of diligence. No discovery is needed to determine that these claims are time barred.

## II.  PLAINTIFFS' CLAIMS FAIL FOR LACK OF STANDING.

Even putting aside the insurmountable statute-of-limitations issue, the Complaint fails to state an actionable RICO claim. Under RICO, a "plaintiff only has standing if . . . he has been injured in his business or property," *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *accord* 18 U.S.C. § 1964(c), and can "allege [a] concrete financial loss." *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 257 (3d Cir. 2007). Plaintiffs' loss theory is that they were "forced to fund kickbacks" and therefore paid "increased private mortgage insurance premiums." Compl. ¶ 18; *see also* ¶¶ 172-75 (alleging "artificially inflated" premiums). But the filed rates paid by Plaintiffs were *per se* reasonable—and therefore Plaintiffs have pled no cognizable injury, and have no standing to sue.

Under the filed-rate doctrine, plaintiffs cannot bring suit claiming they were injured by paying a rate filed with and approved by regulatory authorities. *See Keogh v. Chi. N.W. Ry. Co.*, 260 U.S. 156, 161 (1922); *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 236-43 (3d Cir.

2012).  "Unless and until suspended or set aside, the filed rate is . . . the legal rate," and "is per se reasonable and unassailable in judicial proceedings brought by ratepayers."  *In re N.J. Title Ins. Litig.*, 683 F.3d 451, 461 n.7 (3d Cir. 2012) (internal quotation marks and brackets omitted).  The policy behind this is twofold.  First, "legislatively appointed regulatory bodies have institutional competence to address rate-making issues," and "the interference of courts" would "subvert the authority of rate-setting bodies and undermine the regulatory regime."  *McCray*, 682 F.3d at 241-42 (citation omitted).  This policy takes on even greater importance in the insurance field, because federal law (the McCarran-Ferguson Act, 15 U.S.C. § 1012(b)) gives states the "dominant role in the regulation of insurance."  *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 115 (2d Cir. 2001).  Second, "the filed rate doctrine prevents discrimination in rates paid by consumers because victorious plaintiffs would wind up paying less than non-suing ratepayers."  *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 21 (2d Cir. 1994) (citing *Keogh*).

Mortgage insurance is a highly regulated industry.  Under Pennsylvania law, all insurance rates, including private mortgage insurance rates, must be filed with the Pennsylvania Insurance Department, and mortgage insurers cannot charge premiums that vary from their filed rates.  40 Pa. Code §§ 710-5(a), 710-9.  The Department Commissioner has broad authority to disapprove filings to ensure rates are not "excessive."  § 710-7(b).  The law in Michigan, where the Harrell Plaintiffs' loan was closed, is the same.  Insurers are subject to a comprehensive code mandating that every insurer "file with the commissioner every manual of classification, every manual of rules and rates, every rating plan, and every modification of any of the foregoing that it proposes to use," "indicat[ing] the character and extent of the coverage contemplated."  Mich. Comp. L. § 500.2406.  The commissioner can disapprove "excessive" rates.  §§ 500.2403, 500.2416.

Plaintiffs will likely cite to *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir.

2009), in arguing that the filed-rate doctrine does not apply. While *Alston* did reach that result, it confirms that the *opposite* result is appropriate here. *Alston* was brought under RESPA, not RICO. *Alston* concluded that the filed-rate doctrine did not bar a RESPA claim because plaintiffs were not challenging the reasonableness of their rate, as "the existence of . . . pecuniary harm[] is irrelevant" to a claim under RESPA Section 8. *Alston*, 585 F.3d at 764. That is *not* the case here. Plaintiffs here explicitly allege that the filed mortgage insurance rate they paid was "inflated" (*e.g.*, Compl. ¶ 17), and the existence of pecuniary harm is not only relevant to a RICO claim, but an essential element of it. Thus, courts have found *Alston* inapplicable beyond the RESPA context and have continued to enforce the filed-rate doctrine in challenges to the reasonableness of rates. *Lombardi v. Allstate Ins. Co.*, 2011 WL 294506, *7 & n.8 (W.D. Pa. Jan. 27, 2011) ("Unlike Lombardi's challenges here, the homeowners in *Alston* were not challenging the fairness or reasonableness of the rates imposed."); *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1252 n. 19 (W.D. Wash. 2010) ("Because plaintiffs' claims implicate rates, with plaintiffs seeking in damages the difference between what they paid and what they calculate the rates should have been in the absence of the alleged . . . behavior, this case is distinguishable from [*Alston*]."). The filed-rate doctrine mandates the conclusion that plaintiffs "have suffered no legally cognizable injury," and therefore no relief "can be granted under RICO." *Taffet v. S. Co.*, 967 F.2d 1483, 1488 (11th Cir. 1992).

## III.  PLAINTIFFS' CLAIMS ALSO FAIL ON THE MERITS.

To plead a RICO claim, "the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). Here, Plaintiffs plead neither a valid "enterprise" nor any predicate acts of racketeering.

### A.  This Is a "Paradigmatic Case" of a Failure to Plead a RICO Enterprise.

Plaintiffs allege that the RICO enterprise is an "association-in-fact" consisting of

virtually every mortgage insurance provider in the country, the Defendants, and "their respective officers, directors, employees, agents, and indirect subsidiaries."  Compl. ¶ 153.  To qualify as a RICO enterprise, an association-in-fact "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366 (3d Cir. 2010) (citation omitted).  It is not enough to "simply identify[] the allegedly associated components."  *Id*. at 369.  "[A]fter *Twombly*," "a RICO claim must plead facts plausibly implying the existence of an enterprise" with the required structure and the requisite "common purpose" and "collaboration" among the members. *Id*. at 369-70.

Plaintiffs do not plead these facts. Instead, what they allege is a "hub and spoke" structure with BANA at the center and the mortgage insurers at the spokes.  Compl. ¶ 81.  The agreements said to underlie these spokes are (i) the mortgage insurance agreements between BANA and the insurers, and (ii) the reinsurance agreements between the insurers and BARC.  *Id*. There are no allegations of any agreements among the insurers themselves.  The Third Circuit considered an alleged enterprise following exactly the same schema in *Insurance Brokerage*, where plaintiffs "alleged bilateral agreements . . . between each broker and its insurer-partners," but did not "plead facts plausibly suggesting collaboration among the insurers"—*i.e.*, "[t]he asserted hub-and-spoke structures . . . lacked a unifying 'rim.'"  618 F.3d at 374.  "In the absence of a plausible 'rim' or 'wheel' connecting the alleged insurer 'spokes,'" the Court ruled that the alleged enterprise "fail[s] the basic requirement that the components function as a unit, that they be 'put together to form a whole.'"  *Id*. (quoting *Boyle v. United States*, 556 U.S. 938 (2009)).

The District Court in *Western & Southern Life Insurance Co. v. Countrywide Financial Corporation*, 2012 WL 10731957 (C.D. Cal. June 29, 2012), followed the Third Circuit's

precedent and specifically applied it to allegations indistinguishable from Plaintiffs' here:

> PMI insurers . . . allegedly paid unlawful kickbacks to Countrywide. . . .  As with the underwriter allegations, the AC [Amended Complaint] alleges that the various PMI insurers entered into bilateral commercial agreements with Countrywide.  The AC does not allege that the PMI insurers agreed or cooperated with each other in any way.  Moreover, if the Court credits the AC's allegations that the PMI insurers were forced to pay kickbacks to Countrywide under a pay-to-play system, then the PMI insurers are properly viewed as *victims*, not members of a racketeering enterprise.

*Id*. at *10-11.[6]  This reasoning is squarely applicable here.  Plaintiffs allege, for example, that the "scheme" entailed an "agreement/understanding that the illegal kickbacks would be given and accepted in exchange for the referral of settlement business" to the mortgage insurers, and that mortgage insurers went along with this "scheme" because they "are dependent on the lender to obtain business."  Compl. ¶¶ 7, 65.  Even giving such allegations "[t]he most damning possible inference," the most they amount to is an allegation that the insurers "engaged in bilateral business dealings with [Defendants] but in sharp competition with each other.  That is the type of rimless hub-and-spoke structure that the Third Circuit considered and found wanting in [*Insurance Brokerage*]."  *W. & S.*, 2012 WL 10731957, at *10-11.

For similar reasons, Plaintiffs also fail to plead the requisite "common purpose."  As the Third Circuit held in *Insurance Brokerage*,

> Because plaintiffs' factual allegations do not plausibly imply anything more than parallel conduct by the insurers, they cannot support the inference that the insurers associated together for a common purpose of engaging in a course of conduct. . . . [A] RICO claim pleading nothing more than parallel conduct by separate actors is insufficient.

618 F.3d at 374.  Mortgage insurers motivated "to obtain business" (Compl. ¶ 65) do not have a "common purpose."  The manifest purpose is competitive—to capture business *from each other*, as Plaintiffs admit.  *See* Compl. Ex. 33 at 66 (insurer statement that "[o]ur mortgage insurance

---

[6] The claim in *Western & Southern* was under Ohio's version of RICO, but this difference is immaterial as the state law was construed based on federal RICO precedent.  *See id*. at *8, n.11.

business faces intense competition from other mortgage insurance providers"). "[C]ompetitors who independently engaged in similar types of transactions with the same firm" are not "associates in a common enterprise." *Ins. Brokerage*, 618 F.3d at 375. Quite the contrary, "competitors who compete for contracts present a paradigmatic case of what is not an association-in-fact under RICO." *McCullough v. Zimmer, Inc.*, 2009 WL 775402, *12-13 (W.D. Pa. Mar. 18, 2009) (internal quotation marks and brackets omitted).

**B. Plaintiffs Fail to Plead Any Predicate Acts.**

To plead a "pattern of racketeering activity," (18 U.S.C. § 1962(b)) Plaintiffs must plead predicate acts as enumerated in 18 U.S.C. § 1961(1). The Complaint makes dozens of allegations that Defendants violated RESPA (*e.g.*, Compl. ¶¶ 7, 66, 91, 94-103, 112, 144, 169, 173, 188), but "RESPA violations . . . are not predicate acts included in the statutory definition." *Hopkins v. Am. Home Mortg. Servicing, Inc.*, 2014 WL 580769, *3-4 n.6 (N.D. Cal. Feb. 13, 2014).[7] The only sense in which Defendants are alleged to have violated RICO is by "fail[ing] to adequately disclose" the alleged RESPA violations. Compl. ¶ 10. This is sufficient cause by itself to dismiss the Complaint. Courts have repeatedly held that plaintiffs cannot use RICO to end-run their inability to sue under the statute they really believe was violated.[8]

---

[7] Indeed, RICO has been amended fourteen times since RESPA's 1974 passage to add predicate acts, and at no point did Congress see fit to add RESPA to the list. *See* 18 U.S.C.S. § 1961.

[8] *E.g.*, *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002) (no RICO claim for violations of Higher Education Act, where plaintiffs could not sue under HEA); *Ayres v. GM Corp.*, 234 F.3d 514 (11th Cir. 2000) (no RICO claim for violations of Motor Vehicle Safety Act, where plaintiffs could not sue under MVSA); *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1226-27 (D.C. Cir. 1991) (no RICO claim for violations of Service Contract Act, where plaintiffs could not sue under SCA); *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637-38 (2d Cir. 1989) (no RICO claim for violations of Energy Reorganization Act, where plaintiffs could not sue under ERA); *Welborn v. Bank of N.Y. Mellon*, 2013 WL 149707 (M.D. La. Jan. 14, 2013) (no RICO claim for violations of Trust Indenture Act, where plaintiffs could not sue under TIA); *El Paso Cnty. v. Bank of N.Y. Mellon*, 2013 WL 285705 (W.D. Tax. Jan. 22, 2013) (same). In most of these cases, the plaintiffs had no right of

The Complaint also purports to allege "predicate acts of mail fraud and/or wire fraud, including 'honest services' fraud." Compl. ¶ 7. "Honest services" fraud is not a predicate act under RICO, either. *See Adams v. Cnty. of Erie, Pa.*, 2009 WL 3087214, *6 (W.D. Pa. Sept. 23, 2009). And honest-services fraud, in any event, requires a breach of fiduciary duty. *United States v. Riley*, 621 F.3d 312, 323 (3d Cir. 2010). No fiduciary relationship is alleged based on the arm's-length lending transactions between Plaintiffs and Defendants here. Nor could one be. *See Wash. Steel Corp v. TW Cor*p., 602 F.2d 594, 601 (3d Cir. 1979).

The mail- and wire-fraud allegations fare no better, as they fail to allege any actual fraud:

- Plaintiffs allege that their mortgage documents "fraudulently represented or omitted the true nature of the reinsurance arrangement, and in particular the illegal kickbacks that were paid to Bank of America." Compl. ¶ 108. But Plaintiffs concede that the arrangement *was* disclosed to them—that "an affiliate of Lender" may "take[] a share of the insurer's risk in exchange for a share of the premiums paid to the insurer." Compl. ¶ 111. Thus, Plaintiffs' real objection is not that Defendants failed to disclose the arrangement, but that Defendants did not *characterize* it as "illegal kickbacks" or a RESPA violation. *See* Compl. ¶ 112 (alleging that Defendants' "statements . . . were false" because they did not disclose that "the reinsurance premiums . . . were per se illegal under RESPA"). That would not be cognizable as a "fraud" even if Plaintiffs' view of RESPA were correct. "It is well established that misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes because statements of the law are considered merely opinions. . . ." *Va. Sur. Co. v. Macedo*, 2009 WL 3230909, *8-9 (D.N.J. Sept. 30, 2009).

- Plaintiffs highlight the statement that "[t]he reinsurance or other such risk sharing agreement will not increase the mortgage insurance premium you pay." Compl. ¶¶ 110-11. They claim this was "false and misleading" on the ground that "the private mortgage insurance premiums had been inflated." *Id.* at ¶ 112. This theory is foreclosed by the filed-rate doctrine, because the filed rate was the only legal rate the mortgage insurers could have charged for mortgage insurance—and therefore it was true that borrowers would pay the same rate whether or not loans were reinsured.

- Plaintiffs claim that the "Affiliated Business Arrangement [ABA] Disclosure Statement" provided to them was "false and misleading" because it "does not list BoA RE as an affiliate or subsidiary." Compl. ¶ 113. But there was no legal requirement to list BARC on the ABA statement. ABA statements are governed by 24 C.F.R. § 3500.15, which provides that referrals of settlement services to a

action under the statute they claimed was violated, but the principle is equally applicable here where a right of action once existed but has expired.

corporate affiliate must be disclosed by "[t]he person making each referral." § 3500.15(b)(1). But the referral Plaintiffs challenge was the referral to an unaffiliated mortgage insurance company. Plaintiffs were never referred for reinsurance, and even if they were, they were not referred by BANA (nor is reinsurance a settlement service). Regardless, Plaintiffs did not *need* BARC disclosed in this manner to have notice of the challenged arrangement, since they had *other* disclosures that a BANA affiliate may provide reinsurance. Compl. ¶ 111.

- Plaintiffs claim that the statement that reinsurance "will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law" was misleading because the reinsurance arrangement "negatively impacted Plaintiffs' and the putative class's rights" in some unspecified manner. ECF No. 5 at 9-10. This theory is groundless. The "rights" the provision is referring to are the rights borrowers have to cancel the mortgage insurance "based on actual payments" giving them sufficient equity in the property. 12 U.S.C. § 4903(a)(1). And Plaintiffs nowhere allege—nor could they—that reinsurance has affected Plaintiffs' rights in this fashion.

Finally, Plaintiffs' mail- and wire-fraud allegations fail for perhaps the most fundamental reason of all: they do not actually allege any fraud through the mail or wires. Plaintiffs vaguely allege that Defendants made fraudulent statements in "mortgage documents" (ECF No. 5 at 4) and separately allege that they "transmitted . . . mortgage documents in the mail" (*id.* at 6), but nowhere say that the particular "mortgage documents" containing the challenged statements were mailed. Instead, Defendants are only alleged to have used the mails for other functions with only the most tangential relationship to the alleged "scheme"—for example, mailing "periodic account statements." Compl. ¶ 108. That is inadequate to plead civil RICO fraud. Plaintiffs must allege that they were injured "by reason of" the "acts indictable as mail fraud"— *i.e.*, that the mail or wire fraud itself, not some other act, caused their injury. *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). Plaintiffs do not allege this.

### C. Plaintiffs' Other Claims Are Equally Meritless.

In addition to their primary RICO claim, Plaintiffs assert a separate claim for a "conspiracy" to violate RICO. Compl. ¶¶ 178-189. Such a claim cannot proceed absent an underlying RICO offense, and it must therefore be dismissed along with the primary claim. *Ins.*

*Brokerage*, 618 F.3d at 383.

Plaintiffs' unjust enrichment claim (Compl. ¶¶ 190-93) fails for the threshold reason that "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement." *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (citation omitted). It is also time-barred by Pennsylvania's four-year statute of limitations, 42 Pa. Code § 5525, and Michigan's six-year statute (Mich. Comp. L. § 600.5813)—which cannot be tolled under the discovery rule. *See Trentadue v. Gorton*, 738 N.W.2d 664 (Mich. 2007). Further, the claim fails on the merits because it cannot be "inequitable and unjust for Defendants to retain . . . monies which were procured" by a course of dealings containing no actionable misstatements. Compl. ¶ 192. Finally, the claim, like the RICO claim, requires damages. *Collegesource, Inc. v. Academyone, Inc.*, 2015 WL 469041, *9 (3d Cir. Feb. 5, 2015). The only damages pleaded here are barred by the filed-rate doctrine. Plaintiffs' Complaint should be dismissed in full.

Respectfully submitted,

/s/ David L. Permut
David L. Permut (*pro hac vice*)
Matthew S. Sheldon (*pro hac vice*)
Keith Levenberg (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
dpermut@goodwinprocter.com
msheldon@goodwinprocter.com
klevenberg@goodwinprocter.com

/s/ Mary J. Hackett
Mary J. Hackett
Pa. Bar No. 51215
Ginevra F. Ventre
Pa. Bar No. 316897
REED SMITH LLP
225 Fifth Ave.
Pittsburgh, Pa. 15222
Tel.: (412) 288-3131
Fax: (412) 288-3063
mhackett@reedsmith.com
gventre@reedsmith.com

*Counsel for Defendants*

March 6, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically.  I hereby certify that I have mailed by U.S. Postal Service the document to any non-CM/ECF participants.


By: /s/ David L. Permut_____


Dated:  March 6, 2015