# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM WEISS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 15-62 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| BANK OF AMERICA | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

In this civil action, Plaintiffs assert class claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, as well as state law claims of unjust enrichment. The claims are based on allegations that Defendant Bank of America Corporation, which owns Defendant Bank of America, N.A. ("BANA"), referred borrowers to private mortgage insurance providers in exchange for kickbacks, funneled through Defendant Bank of America Reinsurance Corporation. Following a period of limited discovery on issues surrounding statutes of limitation, Defendants have filed a Motion for Summary Judgment (Doc. 63) on grounds that Plaintiffs' claims are time-barred. For the reasons that follow, Defendants' Motion will be granted as to Plaintiffs' RICO claims, and the Court will decline to exercise supplemental jurisdiction over the state law claims.

**BACKGROUND**

The parties are familiar with the facts of this case, and they will not be recounted here in full. Plaintiffs initiated this lawsuit by Complaint filed on January 14, 2015, which was followed by the now-operative Amended Complaint, filed on April 26, 2016.

Previously, Defendants moved to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on grounds, inter alia, that the RICO claims are barred by the four-year statute of limitations. In that vein, Defendants argued that Plaintiffs' RICO claims arose in 2006 and 2007, at the time of closing. Plaintiffs, in response, contended that their 2012 receipt of notice from counsel triggered the statute of limitations. By Memorandum Order dated December 22, 2015 ("Dec. 22 Mem. Order"), the Court denied Defendants' Motion to Dismiss. In so ruling, the Court rejected Defendants' argument that, based on the mortgage documents and Plaintiffs' participation in their closings, Plaintiffs' claims accrued in 2006 and 2007. The decision was made in light of the then-recent opinion in In re Comm. Bank of N. VA Mortg. Lending Prac. Litig., 795 F.3d 380 (3d Cir. 2015), and applicable pleading-standards. Dec. 22 Mem. Order, pp. 13-15.

**ANALYSIS**

    A.    **RICO – Diligence**

Defendants argue that Plaintiffs' lack of diligence is fatal to Plaintiffs' ability to take advantage of both equitable tolling and the "injury discovery" rule. Plaintiffs focus on the latter, and do not address the former, and the Court will follow their lead.

Under the injury-discovery rule, the statute of limitations begins to run when plaintiffs knew or "should have known of the basis of their claims, which depends on whether and when they had sufficient information of possible wrongdoing to place them on 'inquiry notice' or to

excite 'storm warnings' of culpable activity." National Sec. Sys., Inc. v. Iola, 2007 U.S. Dist. LEXIS 71471, at *8 (D.N.J. Sept. 24, 2007). "Whether information is sufficient to excite storm warnings depends on 'whether a reasonable [plaintiff] of ordinary intelligence would have discovered the information and recognized it as a storm warning'" of culpable activity. Pension Trust Fund for Op. Eng'rs v. Mortgage Asset Sec., 730 F. 3d 263, 272 (3d Cir. 2013). As the Court of Appeals for the Third Circuit ("the Third Circuit Court") has stated in a different context, "a reasonably diligent plaintiff is on inquiry notice when she would have discovered general facts about the fraudulent scheme by the defendant rather than specific facts about the fraud perpetrated on her." Id.

A court considering "injury discovery" proceeds according to a two-step analysis. A defendant carries the initial burden to establish the existence of storm warnings. Id. If the defendant makes this showing, the burden shifts to the plaintiff to show that he exercised reasonable due diligence, but was nevertheless unable to discover his injuries. Id. Then, "[i]f plaintiffs cannot demonstrate the requisite diligence, . . . they 'are held to have constructive notice of all facts that could have been learned through diligent investigation during the limitations period.' . . . Plaintiffs may not excuse their failure to inquire merely because 'reasonable diligence would not have uncovered their injury.'" Id. If a plaintiff fails to investigate, the statute of limitations begins to run at the time that objective storm warnings appeared. Dalicandro v. Legalgard, Inc., 2004 U.S. Dist. LEXIS 2253, at **17-18 (E.D. Pa. Jan. 21, 2004).

Here, Plaintiffs aim their initial attack at the first step of the burden-shifting construct, and argue that there remains a genuine dispute of material fact regarding the existence of storm warnings. The Court already has determined, however, that Defendants have established the existence of storm warnings. Dec. 22 Mem. Order, pp. 12-13. That ruling is the law of the case,

3

and Plaintiffs have failed to persuade the Court that that it should be revisited. At this juncture, therefore, the second stage of the analysis, Plaintiffs' diligence, is determinative.

In arguing that diligence is lacking, Defendants rely, in large part, on Cunningham v. M&T Bank Corp., 814 F. 3d 156 (3d Cir. 2016). That case addressed the timeliness of the plaintiffs' claims, under the Real Estate Settlement Procedures Act ("RESPA"), that a captive mortgage reinsurance scheme violated statutory anti-kickback and anti-fee-splitting provisions. Id. at 159-60. The plaintiffs asserted that the defendants' fraudulent concealments equitably tolled their claims, which otherwise were untimely. Id. at 161. To benefit from tolling, the plaintiffs were required to show, inter alia, that they exercised reasonable diligence in attempting to uncover relevant facts. Id. The court observed that, before closing on their loans, each plaintiff received a disclosure form explaining reinsurance; stating that reinsurance could be with a lender-affiliated company; that the reinsurance company would receive a percentage of payment; and providing each plaintiff the opportunity to opt out of reinsurance. Id.[1]

Nonetheless, after their closings, the plaintiffs took no steps to investigate potential issues surrounding reinsurance. Id. at 161-62. "They did not, for example, ask their mortgage insurer if their particular insurance policy had been reinsured and, if so, with whom. They did not seek the advice of an attorney, research captive reinsurance, request documents related to their mortgage insurance, or take any steps to discover if they had a claim." Id. at 162. Had the plaintiffs done so, the court stated, "they would have found breadcrumbs leading them toward a potential RESPA claim" – such as other lawsuits challenging captive reinsurance arrangements,

---

[1] The facts in Cunningham are fully set forth in the district court's Opinion, reported at Cunningham v. M&T Bank Corp., 2015 U.S. Dist. LEXIS 15767 (M.D. Pa., Feb. 10, 2015).

4

filed as early as 1999 and 2009 – before being contacted by counsel. Id. at 162 & n.3.[2] The Court concluded that the plaintiffs had all the necessary facts at closing, and failed to investigate. Id. at 162. "This inaction," the Court found, "was not reasonable diligence." Id.

Despite significant factual similarities between Cunningham and the present case, Plaintiffs argue that dissimilarities between the legal issues under consideration render Cunningham inapplicable here. Cunningham, they point out, addressed equitable tolling, which involved the discovery of underlying facts, pursuant to RESPA; and the issue at bar differs, because this case is concerned with the injury-discovery rule, and thus the discovery of injury, under RICO. These distinctions notwithstanding, it is clear that the injury-discovery rule asks whether the plaintiff "should have known of his injury," and thus requires that he exercise diligence. Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 506-07 (3d Cir. 2006). It also is clear, as the parties have agreed, that injury-discovery and equitable tolling share a diligence standard. Dec. Mem. Order, p. 11 n.3. Indeed, the Cunningham Court discussed the plaintiffs' diligence while "[s]etting aside [the] distinction" between the discovery rule and equitable tolling. Cunningham, 814 F. 3d at 163. Consequently, the differences in legal context between this case and Cunningham are not grounds to eschew Cunningham's guidance regarding diligence.

The present Plaintiffs, for all intents and purposes, offer their participation in the closing process as a proxy or justification for their undisputed inaction between the closings in 2006 and 2007 and contact from counsel in 2012.[3] While such participation might suffice under some circumstances, it does not here. First, the Court already has determined that "storm warnings"

---

[2] The "breadcrumbs" to which the court referred included lawsuits, including one brought in 2007 by the same law firm representing Plaintiffs. Id.

[3] As they did in opposing Defendants' Motion to Dismiss, Plaintiffs again rely on Community Bank, 795 F. 3d 380 (3d Cir. 2015), another case involving both RESPA and equitable tolling, for the proposition that full participation in the loan process is enough to establish due diligence.

5

occurred, at the latest, in 2008. In so deciding, the Court noted lawsuits and articles that existed in 2006 and earlier. Dec. 22 Mem. Order, pp. 11-13. Further, it is undisputed that, in connection with their respective closings in 2006 and 2007, Plaintiffs Weiss and Harrell signed a document entitled "Risk Sharing Mortgage Disclosure" ("Disclosure").[4] The Disclosure stated that "your lender" – here, BANA – may, "directly or through an affiliated company . . . enter into a reinsurance or other risk sharing agreement with" the mortgage insurer. The Disclosure further stated that the reinsurer "may assume a portion of the risk" associated with mortgage insurance, in exchange for "a percentage of the mortgage insurance premium paid to obtain the mortgage insurance covering your loan." The Disclosures identified Plaintiffs' mortgage insurance providers – for the Harrells, Radian Guaranty, Inc., and for Plaintiffs Weiss and Lessman, Genworth Mortgage Insurance Corporation. The Disclosure also offered Plaintiffs the means and opportunity to opt out of reinsurance, twice pointing to the steps to take "[i]f you do not want the Mortgage insurance on your loan to be reinsured or included in the risk sharing agreement." None opted out, and each Plaintiff testified that he or she understood, before or at the time of closing, that mortgage insurance would be required. Moreover, there is no suggestion that any Plaintiff in any way explored, investigated or inquired into their mortgage insurance or reinsurance at any time prior to being contacted by counsel in 2012.

---

Since this Court's ruling at the 12(b)(6) stage, however, the Third Circuit Court has limited Community Bank's discussion of fraudulent concealment (and, by extension, diligence) to the context of Rule 23-commonality. Cunningham, 814 F. 3d at 163. The court in Cunningham rejected the plaintiffs' argument that Community Bank rendered "their participation in the loan closing . . . sufficient to establish diligence," and this Court is obliged to follow suit.

[4] The signature of Plaintiff Weiss, and not of Plaintiff Lessman, appears on the Disclosure. As Plaintiffs assert, however, the two purchased the property together, and are both identified as borrowers in the mortgage agreement. Mr. Lessman testified, also, that he knew of the mortgage insurance requirement. Plaintiffs' counsel further assert that both couples "cohesively contributed to the closing process," read their mortgage documents and accepted Defendants' representations regarding captive reinsurance.

In light of Cunningham and the developed record, the Court is compelled to find that Plaintiffs have failed to demonstrate that "heeding the storm warnings, they exercised reasonable diligence but were unable to find and avoid the storm." Cetel, 460 F. 3d at 507. This case simply does not present a situation in which Plaintiffs made a failed effort to locate and avoid the storm. Whether Plaintiffs were unlikely to come across the storm warnings due to their reading habits, places of residence, status as ordinary homebuyers or other factors does not alter the conclusion. "This is an objective inquiry and hinges not on a plaintiff's actual awareness of suspicious circumstances or even on the ability of a plaintiff to understand their import." Cetel, 460 F. 3d at 507. Likewise, the difficulty of discovering wrongdoing cannot bolster Plaintiffs' position. See Dalicandro, 2004 U.S. Dist. LEXIS 2253, at *18 (quoting Mathews v. Kidder, Peabody & Co., 260 F.3d 239, 252 n.16 (3d Cir. 2001)). Taken together, the Disclosure forms in 2006 and 2007, information publicly available in 2008 and earlier and Plaintiffs' lack of affirmative conduct prior to 2012 establish that Plaintiffs' RICO claims accrued prior to January 14, 2011 (*i.e.*, four years prior to the filing of the Complaint). In this case, as in Cunningham, Plaintiffs' inaction does not constitute diligence. As a result, there is no genuine issue of material fact and summary judgment is warranted.

Nonetheless, Plaintiffs suggest that Defendants' misrepresentations prevented them from discovering that their premiums had been inflated or misused. This contention conflates the applicable inquiries under equitable tolling and injury-discovery, and, consequently, fails to account for the import of both the storm warnings and the Disclosures provided at closing. When assessing equitable estoppel, which Plaintiffs now disavow, a court looks to whether a defendant's fraud prevented an otherwise-diligent plaintiff from discovering her injuries. Fraudulent concealment is not part of the burden-shifting "injury discovery" inquiry, however. The extant storm warnings and other publicly available information, which Defendants are not

7

alleged to have concealed, function to avert an inquiry into purported attempts to conceal unlawful conduct. In other words, the relevant focus rests on the timing of available knowledge and the duty of inquiry which with Plaintiffs are charged, even if they did not actually gain that knowledge or undertake any inquiry. See, e.g., Cetel, 460 F. 3d at 507. In this context, "a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment,'" because the fraudulent concealment inquiry, and equitable tolling, require diligence. Klehr v. A.O. Smith Corp., 521 U.S. 179, 195, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997). Thus, Plaintiffs' misrepresentation argument must be rejected.

     As a final matter, because the parties tangle over the applicability of RESPA cases in a RICO context, the Court notes that the differences between the statutes' purposes support today's decision. RESPA contemplates the difficulty of discovering the illegalities to which it was addressed, as it "was passed . . . because Congress recognized that the average borrower is incapable of detecting many unfair lending practices." In re Community Bank, 795 F. 3d 380, 404 (3d Cir. 2015). Thus, RESPA has a defensive bent, as it is intended to protect consumers from abusive practices. Freeman v. Quicken Loans, Inc., – U.S. –, 132 S. Ct. 2034 (2012). RICO has an additional purpose: "the stated goal of civil RICO is to encourage active investigation of potential racketeering activity." Mathews, 260 F.3d at 252. Given this purpose of RICO, the Third Circuit Court has expressed reluctance to excuse a plaintiff's failure to investigate, out of concern that such action would discourage investigation of potential racketeering activity. Id. at 252 n.15; see also Klehr, 521 U.S. at 187.

B.     Rico – Separate Accrual

In an effort to overcome the statute of limitations, Plaintiffs next contend that the "separate accrual rule" entitles them to recover for Defendants' acts that occurred during the statutory period, which would begin on January 14, 2011.

As applicable to RICO claims, this rule provides that "the commission of a separable, new predicate act within a 4-year limitations period permits a plaintiff to recover for the additional damages caused by that act." Klehr, 521 U.S. at 190. New misrepresentations alone do not trigger the rule, as "continuing efforts to conceal the initial fraud . . . [are] not separate and distinct fraudulent acts resulting in new and independent injuries." Mathews v. Kidder, Peabody & Co., Inc., 2000 U.S. Dist. LEXIS 23102, at *70 (W.D. Pa. Aug. 18, 2000); see also Hawk Mt. LLC v. Mirra, 2016 U.S. Dist. LEXIS 72962, at *29 (D. Del. June 3, 2016). The separate-accrual rule dovetails with the injury-discovery rule: "When a pattern of RICO activity causes a continuing series of separate injuries, the 'separate accrual' rule allows a civil RICO claim to accrue for each injury when the plaintiff discovers, or should have discovered, that injury." Love v. Nat'l Med. Enters., 230 F.3d 765, 774 (5th Cir. 2000). As Plaintiffs acknowledge, the separate-accrual rule does not permit "bootstrapping" injuries outside the limitations period onto a later and independent predicate act. Klehr, 521 U.S. at 190.

Underlying the separate-accrual rule is the concern that absent such a rule, "future damages that could not be proved within four years of the conduct from which they flowed would be forever incapable of recovery." Love, 230 F.3d at 774. Further, the rule addresses the notion that, "while [a RICO] plaintiff may be aware of the first predicate act immediately upon the injury, it may be four or more years . . . until [the] defendant commits a second predicate act." Matthews, 2000 U.S. Dist. LEXIS 23102, at *34. Courts considering RICO have been particularly mindful, moreover, of "the basic policies of all limitations provisions: repose,

9

elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." Id. at 38 (quoting Rotella, 120 S. Ct. at 1080-1081).

According to Plaintiffs, each transmission of a periodic account statement was in furtherance of the RICO scheme, and constituted a new predicate act of mail and wire fraud. These periodic statements contained misrepresentations about Plaintiffs' payments, and thus hid the scheme; as a result, the statements caused Plaintiffs to mail payment; and, in turn, those payments were used to pay illegal kickbacks.

In support of their argument, Plaintiffs point to four cases. The first is Kuznyetsov v. West Penn Allegheny Health Sys., 2010 U.S. Dist. LEXIS 12999 (W.D. Pa. Feb. 16, 2010), which considered RICO claims based on an employer's failure to pay for hours worked. Judge Donetta W. Ambrose found that the separate-accrual rule applied to each paycheck, as each reflected a discrete pay period. Therefore, each paycheck and pay period did not simply continue an "old injury." Id. at **8-9. The second, Love v. National Med. Enter., 230 F. 3d 765, 774 (5th Cir. 2000), involved fraudulent insurance claims. The court applied the separate-accrual rule because the plaintiff was not obligated to pay future claims; rather, its payment-obligation accrued when each claim was submitted. Id. at 775. Thirdly, in Molus v. Swan, 2007 U.S. Dist. LEXIS 58997, at **20-22 (S.D. Ca. Aug, 13, 2007), the court applied the rule to billing statements that did not relate to earlier-due invoices, but constituted new bills for work allegedly not performed. And lastly, in State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 226 (E.D.N.Y. 2009), the court considered the timeliness of claims that the defendant, inter alia, provided false invoices for medical equipment that never had been supplied.

These cases are distinguishable from the one at bar, and do not compel the result that Plaintiffs seek. Although the predicate acts in Kuznyetsov, Love, Swan and Grafman were alleged to be part of a single RICO scheme, each act was based on a distinct microcosm of

10

"new" (if falsely or fraudulently reported) facts – a discrete pay period, insurance claim or invoices for services or supplies – and constituted a "new" injury.[5] Here, each Plaintiff has indicated that he or she was aware, prior to or at the time of closing, of the requirement to pay for mortgage insurance. As Plaintiffs acknowledge in response to Defendants' Statement of Facts, "Plaintiffs paid the same amount of the monthly mortgage insurance premiums that Plaintiffs were aware they would be required [to] pay prior to or at closing." Doc. 75 at pg. 7 of 42. Thus, each account statement related to a payment amount that was part of the initial closing process, rather than discrete, later-arising facts. Unlike the predicate acts in the cases cited by Plaintiffs, the present account statements – even if each prompted and caused Plaintiffs to make a payment – arose from obligations and facts already known and acknowledged at the time of the parties' mortgage agreements. In sum, the injuries allegedly caused by subsequent account statements, and the account statements themselves, were not "new and separate," as contemplated by either the separate-accrual rule or its underlying principles.[6] Summary judgment, therefore, will be granted.

    **C.**    <u>**Plaintiffs' State Law Claims**</u>

Having determined that summary judgment is appropriate regarding Plaintiffs' RICO claims, the Court must determine whether to exercise supplemental jurisdiction over the state law claims. "[A]bsent extraordinary circumstances, where the federal causes of action are dismissed[,] the district court should ordinarily refrain from exercising [supplemental]

---

[5] Additionally, both <u>Grafman</u> and <u>Swan</u> addressed motions to dismiss, rather than for summary judgment, and their discussions of the separate-accrual rule are cursory.

[6] The Court does not separately address Plaintiffs' argument that the April 5, 2012 filing of a class action tolled their claims. Given the decision herein, the class action was filed too late to affect the timeliness of Plaintiffs' RICO claims.

jurisdiction." Bright v. Westmoreland Cnty., 380 F.3d 729, 751 (3d Cir. 2004) (internal alterations omitted). "The district court must decline to decide the . . . state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Id. (citation to quoted source omitted).

Plaintiffs have failed to provide such justification, and the Court will not attempt to supply it for them. Simply put, the parties and their counsel have dedicated the lion's share of their energy and analyses to the timeliness of Plaintiffs' federal claims. The state claims, at best, may be characterized as a "side-car," and the Court is disinclined to engage the intricacies of state-law claims for unjust enrichment, under both Pennsylvania and Michigan law. To date, the parties only have taken limited, expedited discovery regarding the timeliness of Plaintiffs' claims,[7] and the Court does not believe that considerations of judicial economy, convenience and fairness favor an exercise of supplemental jurisdiction. Even were Plaintiffs' counsel to disagree, the aforementioned considerations certainly do not rise to the level of "extraordinary circumstances," as contemplated in Bright.

Accordingly, the Court hereby enters the following:

## II. ORDER

Defendants' Motion for Summary Judgment (**Doc. 63**) is **GRANTED** as to Plaintiffs' RICO claims, and the Court declines to exercise supplemental jurisdiction regarding the state law claims. The Court, having finally adjudicated all claims properly before it, will issue a separate judgment order pursuant to Federal Rule of Civil Procedure 58.

---

[7] See Case Mgmt. Order dated Feb. 3, 2016 (Doc. 39) at ¶ 2.

IT IS SO ORDERED.


November 22, 2016                               s/ Cathy Bissoon
                                                Cathy Bissoon
                                                United States District Judge

cc (via ECF email notification):

All Counsel of Record